[Civ. No. 3248.   Third Appellate District.—November 28, 1927.]

L. S. WHETSTONE, Respondent, v. BOARD OF DENTAL EXAMINERS OF CALIFORNIA, Appellant.

Frank J. Burke and Jesse W. Carter for Appellant.

J. M. Inman and P. G. West for Respondent.

PLUMMER, J.—On the fifteenth day of March, 1926, the Board of Dental Examiners of the state of California, after hearing had upon the accusation charging the petitioner with unprofessional conduct, made and entered its order suspending the petitioner's license to practice dentistry in the state of California for the period of five years. Upon writ of *certiorari*, this order was annulled. From this judgment the Board of Dental Examiners of the state of California appeals.

The accusation filed with the Board of Dental Examiners, and upon which the petitioner was tried and found guilty, alleges that the petitioner on or about the twelfth day of January, 1926, did wilfully and unlawfully aid and abet an unlicensed person to practice dentistry in the state of California in that the said L. S. Whetstone did knowingly and unlawfully allow and permit his office nurse to clean teeth and administer treatment for pyorrhea on the gums of one J. W. Cull, at the office of the said L. S. Whetstone,

in the city of Sacramento, and that the said L. S. Whetstone did, prior thereto, and on or about the fifteenth day of August, 1925, knowingly and wilfully permit and allow his office nurse to treat the gums of one J. O. Babcock for pyorrhea, and that the said L. S. Whetstone did wilfully, knowingly, and unlawfully permit and allow his office nurse, at his office, to clean the teeth of various other persons, at various other times, and that during all of said times said office nurse was not licensed to practice dentistry in the state of California, which said fact was, during all of said time, well known to the said L. S. Whetstone.

It was contended in the trial court and is also contended here that the accusation filed against petitioner is insufficient in substance and form, and that it does not sufficiently comply with the provisions of section 14 of the Dental Act of the state of California known as Act 2048, Deering's General Laws. That section reads as follows: "The proceedings to revoke or suspend any license under the third subdivision of section 13 may be taken upon the information of another. All accusations must be in writing, verified by some party familiar with the facts therein charged and three copies thereof must be filed with the secretary of the board. Upon receiving the accusation the board shall, if it deem the complaint sufficient, make an order setting the same for hearing at a specified time and place and the secretary shall cause a copy of the order and accusation to be served upon the accused at least ten days before the day appointed in the order for said hearing." No question is raised as to service of citation nor as to the statutory time allowed petitioner to answer the accusation. The objection is directed to the fact that at the hearing two witnesses were permitted to testify to other acts relating to the practice of dentistry where the patients were other than those specifically mentioned in the accusation. This testimony was admitted under the general allegation contained in the accusation that the petitioner had permitted the nurses in his office to perform the same and similar acts upon other patients, just as set out in the accusation in relation to the patients named Cull and Babcock.

In support of his contention that the accusation is insufficient and does not comply with the statute by reason of this general portion thereof, which we have set forth,

the petitioner cites the case of *McClatchey* v. *Superior Court*, 119 Cal. 413 [39 L. R. A. 691, 51 Pac. 696]. An examination of the facts set out in the opinion in that case discloses, however, that it does not support petitioner's contention. In the McClatchey case the petitioner was denied an opportunity to present testimony. The sufficiency of the accusation or the pleadings upon which McClatchey was being tried were really not involved. It was simply the right to be heard and to present testimony which was denied. The petitioner also relies upon the case of *Dyment* v. *Board of Medical Examiners*, 57 Cal. App. 260 [207 Pac. 411]. In the Dyment case the sufficiency of the accusation was directly involved, but the circumstances there are readily distinguishable from those presented to us in the case at bar. In the Dyment case the accusation charged the petitioner with being guilty of unprofessional conduct by violating section 14 of chapter 354 of the General Statutes of 1913 and acts amendatory thereof of the state of California, "in that he procured by fraud and misrepresentation a certificate to practice medicine and surgery in the state of California." No facts or acts were set forth in the accusation upon which the charge of fraud was based. No intimation was given by the accusation of the acts relied upon to sustain the charge or what kind of testimony would be introduced in order to sustain the charge. In the case at bar the petitioner is charged with specific acts. Those acts are specifically alleged to have been performed in relation to certain patients, and the same kind of acts in relation to other patients. In the Dyment case the accusation contained no specific allegations of fact. No one, from reading the accusation, could form a conclusion as to what kind of acts would be relied upon as proving the fraud charged or as constituting the fraud charged. In the case at bar the petitioner is given direct and specific notice of the acts with which he is charged. The unprofessional conduct is the gravamen of the charge, not the names of the patients. What the petitioner did constituted his unprofessional conduct, and what the petitioner did, as we have just stated, is directly and specifically set forth. And while we agree with the petitioner that "the right to practice dentistry is a vested property right, and dentists holding such rights under the Board of Dental Examiners, and subject to its

rules and regulations are entitled as a matter of right to have such rules and regulations relative to their removal from their profession, fairly invoked and applied,'' we are of the opinion that the accusation in this case sufficiently conforms in all matters of substance with the Dental Act of the state of California, and that the petitioner has not been prejudiced by any want of either form or substance in the accusation, and, therefore, had full notice of the acts charged as being unprofessional.

■ No testimony having been introduced relative to the charge of treating the patient Babcock, the petitioner's motion to strike that portion of the charge was granted. The cause was then submitted by the petitioner without the introduction of any testimony. After the cause had been submitted the petitioner moved the Board of Dental Examiners to reopen the cause and continue the hearing in order that the petitioner might introduce testimony rebutting the testimony of the two witnesses relative to the general charges contained in the accusation. This motion was denied. While we are not prepared to say that boards acting in the capacity such as the defendant was in this case should follow the strict letter of the law relative to reopening cases and permitting opportunity to introduce further testimony, it does not appear in this case that the petitioner had any such testimony or offered any evidence whatever to the Board of Dental Examiners that such testimony could be produced, nor was any showing made as to any efforts made by the petitioner to secure such evidence. Under such circumstances we cannot say that the Board of Dental Examiners abused its discretion in refusing to grant the continuance. We may here state that the testimony of the two witnesses, as to the general charges, presented nothing of substance for the consideration of the Board of Dental Examiners, and does not appear to have been relied upon in support of the accusation filed against the petitioner, and is not presented to us as containing evidentiary matter in support of the judgment of the Board of Dental Examiners.

■ It is further contended that the evidence is insufficient to support the judgment. The transcript sets forth the following uncontroverted testimony: The witness Cull, after testifying that he had gone to the office of Dr. Whetstone,

in the city of Sacramento, received treatment from him in the removal of tartar from his teeth, and had his gums examined; that an agreement was entered into between him and Dr. Whetstone for a course of treatment costing the sum of $35. That the patient called at different periods of time and received treatment. That the witness called at the office of Dr. Whetstone and received treatment upon five different occasions. That after the first treatment by the doctor, as just described, he called at the office of Dr. Whetstone and received the following treatment from one of the doctor's nurses. We will describe it by setting forth the questions and answers: "Q. What did the treatment consist of? Explain to the Board what was done? A. Well, I don't know the right name for it, but it was just a slight scraping and medicine injected - in the gums, the same as he had done. Q. A slight scraping and medicine injected in the gum? A. Yes, sir. Q. The same, you say, as Dr. Whetstone? A. Only a slighter nature. Q. A slighter nature; and this nurse, Mrs. Babcock, did this at that time? A. Yes, sir." On the subsequent occasion the testimony shows the following: "Q. What, if anything was done by either Dr. Whetstone or by the nurses on this fourth occasion? A. Yes, sir—just medicine put into the teeth the same as the time before by the nurse. Q. And were any instruments injected or used by the nurse on your mouth? A. Yes, sir; she poked around in my teeth with them and tested around. Q. And some medicine was injected? A. Yes, sir. Q. Into your gums? A. Well, not exactly injected—poked between the teeth." On another occasion the testimony is as follows: "Q. On this occasion, February 1, 1926, you met Mrs. Babcock at the office there? A. Yes, sir. Q. Was anything done on that occasion? A. I believe that was the time that my teeth were scraped or brushed with the drill. Q. Was any paste used on your teeth on that occasion? A. Yes, sir. Q. Well, you testified that she inserted instruments in your mouth? A. Yes, sir. Q. And that she put medicine between your teeth? A. Yes, sir. Q. And that she used paste? A. Yes, sir. Q. And did she use—what did—I don't know whether you would know what to call it or not—did she use a scraper or something to scrape the tartar off your teeth? A. Yes, sir." As to what took place upon the first visit of the witness to Dr.

Whetstone's office, the transcript shows the following (upon cross-examination): "Q. What discussion was had there with regard to the trouble with your teeth? A. Well, he just told me I needed a few fillings and told me that tartar should come off, and made me a price of $35, told me how many treatments there would be, etc. Q. Well, did he tell you what was the matter with your teeth? A. Well, I cannot say that he did, just what was the matter with my teeth; he said there was an awful lot of tartar; I know that. Q. Did he say anything about pyorrhea at that time? A. I cannot say whether he did or not. Q. Did he ever say anything to you about pyorrhea? A. No, sir. Q. Did anybody in his office ever say anything to you about pyorrhea? A. I can't say whether they did or not; if they did I can't remember it. Q. You were up there to get information, weren't you? A. Yes, sir. Q. And you can't recall whether anybody in that office told you a single time whether you had pyorrhea or not? A. True enough. Q. You knew you had it, didn't you? A. I wasn't sure that I had it, but they told me I had it. Q. Who do you mean by 'they'? A. Dr. Renwick." The transcript further shows similar treatment at the different visits made by the witness to the office of Dr. Whetstone, and that every time he was treated by the nurse he paid therefor the sum of $2.50.

We do not need to follow the discussion of counsel as to what may be inquired into upon *certiorari.* The law seems to be well settled that jurisdictional matters only can be considered, but where there is an entire want of admissible testimony, it appears to be held that jurisdiction is lacking. In this case if there is any substantial testimony supporting the conclusion of the Dental Board, the judgment of the trial court should be reversed.

Section 11 of the Dental Act to which we have referred defines the practice of dentistry, among other things, as follows: One who shall "for a fee, salary or reward, paid directly or indirectly, either to himself or to some other person, perform an operation of any kind, or treat disease or lesions of the human teeth or jaw, or correct malimposed positions thereof, or in any way indicate that he will perform, by himself or his agents or servants, any operations upon the human teeth or jaws, or make an examination of, with the intent to perform, or cause to be performed, any

operation on the human teeth or jaws," etc., is practicing dentistry. In the case of *Jacobs* v. *Board of Dental Examiners*, 189 Cal. 709 [209 Pac. 1006], the supreme court had occasion to define some of the terms used, which we have just quoted, constituting the practice of dentistry. In relation to the intent of the legislature in using the word "operation," it is there said: "It does not require the performance of a surgical operation to bring one within the purview of the law. The word 'operate' and 'operation,' technically used in connection with surgery, mean 'to perform some manual act upon the body of the patient, usually with instruments, with a view to restore soundness or health, or otherwise improve the physical condition,' and 'the act or series of acts and manipulations performed upon a patient's body, as in setting a bone, amputating a limb, extracting a tooth, etc. (Century Dictionary.) They have also a plain, ordinary meaning, in the light of which this act may and, we think, should be construed. According to the authority just quoted 'operate' means 'to perform or to be at work'; 'to·produce an effect, etc.; work,' and 'operation' means 'action,' 'working,' 'a specific act or activity,' and 'the course of action or series of acts by which some result is accomplished.' The same dictionary defines 'an operator' as one who operates in any way, or on or against anything." In the Jacobs case the acts which were held to come within the definition of practicing dentistry, as set forth in section 11, *supra*, the work performed was as follows: A plaster of paris mold or cast of the mouth was taken for the purpose of getting the measure for a plate. This was done on the first visit. On the next day a wax bite of the mouth was taken by placing a piece of wax in the patient's mouth and telling him to bite on it. On the third visit a wax plate set with teeth was placed in the patient's mouth for him to try in, causing the patient to bite into the wax mold for a "try in." On the fourth visit the finished plate· was delivered to the· patient. He paid therefor the sum of $10. All this work was done in Dr. Jacobs' office by one Findley, not a licensed dentist.

In the case of *State* v. *Sexton,* 37 Wash. 110 [79 Pac. 634], the supreme court of Washington affirmed the judgment of the lower court wherein an accusation against the appellant was held sufficient in that it charged the crime of

practicing dentistry without a license, in that the appellant did treat a disease and lesion of the human teeth, and did correct malpositions of the human teeth and jaws of one R. A. Metzer, in violation of the provisions of the dental laws of that state. The facts in that case established the following: That the appellant cleaned the teeth of Metzer by removing tartar therefrom, and made an examination of them in order to give an estimate of the cost of having them fixed; that he "sounded" them and "picked" them. This testimony, even though controverted, was held sufficient to sustain a judgment in a criminal prosecution finding the defendant guilty of practicing dentistry without a license. As to what is meant by the term "aiding" and "abetting" an unlicensed person to practice dentistry, it is sufficient to refer to the case of *Lassen* v. *Board of Dental Examiners*, 24 Cal. App. 767 [142 Pac. 505], where those terms have received consideration. ■ It is likewise a matter of defense in hearings of this kind to show that the person employed in the practice of dentistry has been duly licensed. (*Anderson* v. *Board of Dental Examiners*, 27 Cal. App. 336 [149 Pac. 1006].) The burden of proof is upon the employer to show that his employee is duly licensed. ■ Where instruments are used in the removal of any accumulations upon the teeth, where medicines are employed in treating the gums of a patient, where paste is placed upon the teeth as a part of such treatment and thereafter removed by a revolving brush, propelled by a power not stated, which is used in removing the paste and as a part of the process of cleaning them or as a part of the treatment, we think a charge of practicing dentistry as defined by the Dental Act has been made out, and if one is charged, as in this case, with aiding and abetting an unlicensed person to practice dentistry who, in his office, performs such acts upon his patient, a judgment so finding is supported by the testimony. It follows from what has been said that the judgment of the trial court should be, and the same is, hereby reversed, the writ of review denied, and the petition therefor dismissed.

Hart, J., and Finch, P. J., concurred.